GROSS INCOME TAX DIVISION, ETC. *v.* CROWN DEVELOPMENT COMPANY, INC.

[No. 28,880. Filed December 16, 1952.]

450

*J. Emmett McManamon*, Attorney General, *John J. McShane, Lloyd C. Hutchison, Joseph E. Nowak* and *Robert F. Wallace*, Deputy Attorneys General, for appellant.

*Farbaugh, Chapleau & Roper*, of South Bend, for appellee.

GILKISON, J.—This is an action brought by the appellee under §§64-2601 to 64-2635 and §§63-3001 to 63-3030 Burns' 1951 Replacement. The controversy arose when appellant took steps to tax appellee for certain alleged omissions to report and pay gross income tax, the nature of which will hereafter more fully appear.

Such action was had in the matter that it was thereafter referred to the Hearing Judge of the Indiana Department of State Revenue, Hon. Byron Emswiller, and after a full hearing, the Hearing Judge found in favor of appellee. Thereafter, appellee filed its petition to transfer, and complaint, agreeable with the statutes noted, in the St. Joseph Superior Court No. 1, to which appellant filed its answers in affirmation and denial. After trial that court rendered its judgment for appellee, that defendant (appellant) take nothing by the action and that plaintiff (appellee) recover its costs.

A motion for new trial was overruled, and this appeal was perfected.

The controversy relates to appellee's gross income tax returns for the years 1946, 1947 and 1948. During those years appellee was engaged in the business activity of acquiring unimproved real estate, borrowing construction funds with which it had buildings constructed on such real estate, and then selling its equity in the improved real estate. In its brief, among other things, appellant states: "It seems particularly noteworthy that all funds borrowed by taxpayer were paid to Place and Company, Inc. for construction services rendered, that Place and Company, Inc. paid a Gross Income Tax on these funds, and that taxpayer has already paid a tax upon all equity money realized."

For convenience the parties have divided appellee's transactions in the sale of such improved real estate into three categories, numbered A, B and C as follows:

A. Within the taxable year, the purchaser procures a new loan and pays off the construction mortgage which purchaser has assumed and agreed to pay.

On these transactions appellant contends that appellee should pay a gross income tax on the gross value of the real estate sold, and not merely on the value of the equity. If the tax is so applied appellee would owe an additional tax on property sold in this category of $3,378.44 for 1946; $5,141.79 for 1947, and $174.00 for 1948, a total of $8,694.23.

B. After the improved property was sold and within the taxable year a novation was effected between the mortgagee, and the purchaser, releasing the mortgagor from liability on the notes and mortgages.

If the tax is applied as contended by appellant, the gross value of the real estate transferred will be taxed

to appellee and not merely the value of the, equity owned and transferred by appellee.

The amount of additional tax falling within this category would be, nothing for 1946, $2,519.21 for 1947 and $1,740.88 for 1948, a total of $4,260.09.

C. Where the purchaser pays the seller for his equity and assumes and agrees to pay the outstanding note secured by mortgage on the real estate sold, and the purchaser continues to pay agreeable with the terms of the mortgage. Appellant contends that appellee is liable for a gross income tax on the gross value of the real estate described in the deed and not merely on the value of its equity therein received from the sale by the mortgagor.

If appellant's contention prevails the additional tax falling in this category would be, for 1946, $336.14, 1947, $328.51, 1948, $39.44, a total of $704.09.

It is appellee's contention that its liability for gross income tax is limited to the actual gross receipts by it from the several transactions involved.

As applicable to each of the categories mentioned, it may be stated that when the owner of real estate borrows money and secures the lender by a mortgage on the real estate, such transaction creates a mortgage interest in the real estate in the mortgagee, and thereby the owner reduces his own interest to the extent and by the amount of the mortgage interest so created. If the owner thereafter sells the real estate and in his deed of conveyance specifies that the grantee assumes and agrees to pay such mortgage indebtedness, the grantee then becomes the principal debtor and the grantor is relegated to the secondary relationship of a surety. *Black* v. *Krauss* (1949), 119 Ind. App. 529, 537, 85 N. E. 2d 647. *Ellis et al.* v. *Johnson, Trustee* (1884), 96 Ind. 377, 381 and

cases cited. *Hill, Adm'r.* v. *Minor et al.* (1881), 79 Ind. 48, 54.

We have long held that to authorize the collection of a gross income tax a transaction must come clearly within the statutory provisions providing therefor. In case of doubt the statute will be construed against the state and in favor of the taxpayer *Walgreen* v. *Gross Income Tax Division* (1947), 225 Ind. 418, 420, 75 N. E. 2d 784. *R. L. Shirmeyer, Inc.* v. *Ind. Revenue Bd.* (1951), 229 Ind. 586, 591, 99 N. E. 2d 847. *Dept. of Treasury* v. *International Harvester Co.* (1943), 221 Ind. 416, 421, 47 N. E. 2d 150. *Oster* v. *Department of Treasury* (1941), 219 Ind. 313, 317, 37 N. E. 2d 528. *Department of Treasury* v. *Muessel* (1941), 218 Ind. 250, 255, 32 N. E. 2d 596. *United States* v. *Merriam* (1923), 263 U. S. 179, 188, 68 L. Ed. 240, 244, and cases cited.

The gross income statute, among other things, provides:

"There is hereby imposed a tax upon the receipt of gross income, measured by the amount or volume of gross income, and in the amount to be determined by the application of rates on such gross income as hereinafter provided. Such tax shall be levied upon the receipt of the entire gross income of all persons resident and/or domiciled in the state of Indiana, except as herein otherwise provided; and upon the receipt of gross income derived from activities or businesses or any other source within the state of Indiana, of all persons who are not residents of the state of Indiana, and shall be in addition to all other taxes now or hereafter imposed with respect to particular privileges, occupations, and/or activities. Said tax shall apply to, and shall be levied and collected upon, the receipt of all gross income received on or after the 1st day of May, 1933, with such exceptions and limitations as may be hereinafter provided." §64-2602, Burns' 1951 Replacement.

The first section of the gross income statute, Section 64-2601 Burns' 1951 Replacement contains a large number of definitions of terms used. Clause (h) thereof defines the words "receipts" as used in the statute thus:

"Except as hereinafter otherwise expressly provided, the term 'receipts' as applied to a taxpayer, shall mean the gross income in cash, notes, credits and/or other property which is received . . . by a third person for his benefit."

We shall first give attention to the transactions described in Category A. In so doing we are bound by the statutory definitions of the controlling terms used.[1] The total gross values of the properties transferred in this category upon which no gross income tax was paid by appellee for the three years involved amount to $869,423.28. This is wholly represented by the outstanding mortgages against the property involved in the transactions and which mortgage indebtedness the purchasers assumed and agreed to pay to the mortgagees as part of the purchase price of the real estate transferred. As before noted it is admitted that appellee, in fact, received only the payment for its equity in such real estate and that it has paid in full the gross income tax on the purchase price of this equity. The only question presented with respect to the transactions in this category, therefore, is: Does appellee owe gross income tax on the outstanding indebtedness against the real estate involved, which indebtedness is repre-

___

[1] "The cardinal principle in construing a statute is to ascertain and give effect to the legislative intent, . . . and where, in an act it is declared that a term shall receive a certain construction, the courts are bound by that construction, though otherwise the language would be held to mean a different thing. Smith v. State (1867), 28 Ind. 321, 325. State ex rel. v. Harrison (1888), 116 Ind. 300, 307, 19 N. E. 146; Arnett v. State ex rel. (1907), 168 Ind. 180, 80 N. E. 153, 8 L. R. A. (N. S.) 1192, 25 R. C. L. 1049." State ex rel. v. Grange (1929), 200 Ind. 506, 510.

sented by outstanding valid notes and mortgages, owned by the mortgagee, which the purchasers have assumed and agreed to pay, and which they have within the year fully paid, from funds received from a new mortgage executed by them? Answering this question agreeable with the facts and the definitions noted we must say that appellee did not receive this sum or any part of it "in cash, notes, credits and/or other property," nor has it been "received by a third person for" appellee's benefit. So far as shown by the briefs of the parties the mortgage indebtedness was paid only in the manner above noted and the appellee never at any time owned the outstanding indebtedness noted or any interest therein. On the contrary it owed it. The outstanding indebtedness was never a credit or asset to appellee but as to it, it was a liability. In no event could it ever become an income to appellee, but in certain events it might become an outgo. It cannot be contended that appellee received any income or benefit by the transactions noted over or above that which it received for its equity. By the transactions appellee and the mortgagee also received the contract of the purchasers to pay the outstanding notes and mortgages to the mortgagee. No effort has been made by appellant to place a value upon this contract or to tax it. It would be difficult to place any value upon it, since the total real estate surety may be equal to or in excess of the sums due or to become due on the outstanding mortgages, or the assuming purchaser may be fully able to liquidate the mortgage, in either of which situations no liability against appellee would ever exist in fact. When the outstanding mortgages were paid by the purchasers in the manner noted the payment was for the "direct benefit" of the mortgagee and the purchasers, and not of the mortgagor. Any

benefit to the mortgagor is merely incidental, and not direct. *Black* v. *Krauss* (1949), 119 Ind. App. 529, 537, supra. *Begein et al.* v. *Brehm et al.* (1890), 123 Ind. 160, 165, 23 N. E. 496.

We think the trial court correctly determined the questions presented with respect to the proposed taxation in Category A.

In Category B are grouped all transactions within the taxable year in which the assuming purchaser and the mortgagee executed a substitution agreement, as follows: "In consideration of said assumption and subject to the terms hereof, mortgagee does hereby release and discharge the mortgagor from all liability for the indebtedness evidenced by said note and mortgage."

What we have said with reference to the transactions had under Category A apply with equal force to the transactions had under Category B. In the cases under this category the assumption of the notes and mortgages by the purchasers made them the direct and principal debtors, and released appellee from liability on the mortgages. The mortgagee and the purchasers entered into the substitution contract noted, and thereby made the purchasers the sole debtors of the outstanding notes and mortgages, releasing the mortgagor from liability thereon. This was a contract within their power to make. However, it did not constitute a receipt of cash, notes, credits and/or property by the appellee, or by a third party for its direct benefit. It added nothing in value to its estate. Any benefit imaginably received by the appellee from this contract is indirect and merely incidental.

We do not think the trial court committed error in finding for the appellee with respect to the transactions had under Category B.

In Category C are grouped transactions in which the mortgagor sold the real estate to purchasers who assumed the payment of the notes and mortgages and they were neither paid nor released in the taxable year of execution of the respective deed of conveyance. In these instances presumably the purchasers availed themselves of the payment terms provided by the notes and mortgages.

What we have said with respect to the transactions grouped under Categories A and B applies with equal effect to the transactions under Category C. In addition, in all the transactions under this category, appellee's notes and mortgages are still outstanding and unpaid and it has received nothing thereon for its direct benefit, as provided by Cl. (i) Sec. 64-2601 Burns' 1951 Replacement. Of course, the purchasers have assumed the payment of the notes and mortgages. This they have done for their own direct benefit. It is difficult to envision a situation where this assumption of the indebtedness could become directly beneficial to the original mortgagor, since apparently in each instance, the value of the mortgaged property is greatly in excess of the mortgage indebtedness, and it and the purchasers are primarily liable for the payment of the mortgage liens; appellee's liability being only secondary.

It is contended by appellants that appellee is liable for gross income tax upon the entire purchase price of the real estate sold, though that purchase price was received partly in cash (about which there is no controversy in this proceedings because the total income tax has been paid thereon) and partly in what appellant calls "constructive receipts". It is the effort of appellant to tax the latter, that has provoked the controversy. We shall attempt to solve this proposition. As far as we can ascertain from the briefs it is not

contended that the gross income statute involved provides in so many words for the assessment of a tax upon "constructive receipts". A careful reading of the statute discloses that the legislature has never mentioned "constructive receipts" therein. Apparently appellant desires this court by some method of construction of the involved statute to find that it will permit the assessment of a tax other than the tax expressly and clearly provided for by the law, which proposed tax appellant has called "constructive receipts". Clause (i) of Sec. 64-2601 Burns' 1951 Replacement provides:

> "Except as hereinafter expressly provided, the terms 'receive' or 'received' or other forms thereof, as applied to a taxpayer, shall mean the actual coming into possession of, or the crediting to, the taxpayer of gross income as hereinafter defined, or the payment of his expenses, debts or other obligations by a third party for his direct benefit."

It cannot be contended that the amount of the mortgage debt of the mortgagor would come into the possession of the mortgagor when and if it were paid by the assuming purchaser, nor would it be credited to the mortgagor as "gross income" as that term is defined in clauses (i) and (m) of Sec. 64-2601 Burns' 1951 Replacement, supra, nor would it be a payment of mortgagor's expenses, debts or other obligations by a third party for its *direct* benefit. On the contrary it is a payment of borrowed money by the assuming grantees for their direct benefit—freeing their property from the mortgage lien. In no event could it come to appellee as an income.

The record indicates that appellant, under its rule-making power as allowed by Sec. 64-2629 Burns' 1951 Replacement, adopted a rule or regulation No. 3405

effective April 27, 1946, part 2 of which provides as follows:

"If any mortgage existing on real property at the time of sale was executed by the seller of such real estate as security for borrowed money received by, or credited to, such seller, then no deduction whatsoever may be taken by the seller, regardless of whether the mortgage is assumed by the purchaser; satisfied by the purchaser or a third party; or satisfied by the seller with funds provided by the purchaser or other parties."

Authority of the director to make rules and regulations is contained in clause (a) of Sec. 64-2629 Burns' 1951 Replacement which is as follows:

"(a) The director shall from time to time promulgate in the manner provided by law such rules and regulations not inconsistent with this act [§§64-2601—64-2631], for making returns and for the ascertainment, assessment and collection of the tax imposed hereunder, as he may deem necessary and desirable. Such regulations may also prescribe the qualifications of persons permitted to represent taxpayers before the department in connection with any taxes imposed under the terms of this act, and may provide for the admission and/or exclusion of such persons."

Any rules and regulations made must not be inconsistent with the gross income tax act. It is interesting to note that from November 15, 1943 to April 27, 1946, when part 2 to Rule 3405 by its terms was attempted to be made effective, the Indiana Gross Income Tax Division, by its Regulation 2804 Series VI effective from November 15, 1943 to April 26, 1946, exempted from gross income tax, all the mortgaged interest assumed by the purchaser, leaving the equity only subject to tax, thus:

"Sale of Mortgaged Property. Taxpayers selling real property upon which there is a mortgage. lien will be deemed to be selling only an equity therein when the mortgage lien is assumed by the purchaser, and only the amount received in cash, notes or other property will be reported for gross income tax."

Similar rules and regulations had governed the department continuously from the effective date of the law, May 1, 1933. While this construction of the law is not necessarily binding upon appellant, it is pursuasive on the subject, as to what the law really means. It agrees with our thought on the subject as expressed herein.

The statute, Sec. 64-2629 Burns' 1951 Replacement, supra, indicates that the legislature did not attempt thereby to delegate any legislative power to the director. Only the legislature can say what may be an income subject to gross income tax. It has not said that a mortgage interest in property is an asset to the mortgagor that is subject to assessment for gross income tax. It is not necessary for us to determine in this case whether the legislature could lawfully tax such interest to the mortgagor, since it has not attempted to do so. The director under this rule-making power noted, is without authority to make such mortgage interest in real estate subject to such assessment. This court is without power to invade the domain of legislation and accomplish the same end.

Appellant disavows any intention to rely upon the regulation noted. It contends that the right to make the assessment is contained somewhere within the statute, as a matter of construction. We cannot agree with this contention.

Finding no error, the judgment of the trial court is affirmed.

Jasper, J., concurs in result.

NOTE.—Reported in 109 N. E. 2d 426.