**Linda WARE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 2–382A72.

Court of Appeals of Indiana, Second District.

Oct. 20, 1982.

Rehearing Denied Jan. 28, 1983.

Merle B. Rose, Cronin & Rose, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., James W. Turpen, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Defendant-appellant Linda Ware (Ware) appeals from a conviction by the court of neglect of a dependent, a class D felony, claiming that the evidence does not demonstrate she "knowingly" neglected her child and that the statute under which she was convicted is unconstitutionally vague.

We affirm.

## FACTS

The evidence most favorable to the judgment discloses that on July 27, 1980, Ware went to the laundry, leaving her seven-year-old daughter (M. W.) in the care of one Gary Smith (Smith), Ware's boyfriend. During Ware's absence from her Indianapolis apartment, Smith forced M. W. to submit to sexual intercourse. Afterwards, he warned the child against telling anyone of the incident.

Although M. W. apparently heeded Smith's warning at first, she became withdrawn and suffered from nightmares fol-

lowing the incident. A few days later M. W. developed a painful vaginal discharge. On August 15, Ware decided to obtain medical treatment for the child, admonishing her on the way to the hospital "not to tell it was Gary [Smith]." *Record* at 113. M. W. obeyed, initially accusing another child of the rape. Not until January, 1981 did M. W. admit that her assailant had been Smith and that she had fabricated her original story at Ware's request.

A medical examination conducted on August 15 revealed that M. W. had gonorrhea. A few days earlier, both Ware and Smith had been diagnosed as having gonorrhea. Ware admitted that she had engaged in sexual intercourse with Smith on a regular and exclusive basis during the period in question. Medical testimony established that gonorrhea is transmitted almost exclusively by sexual intercourse.

Ware testified that after M. W. contracted gonorrhea, Ware continued to permit Smith to spend three or four nights a week in the apartment she shared with M. W. until November, when Ware's ex-husband gained custody of the child.

Ware was found guilty and sentenced by the trial court to two years in prison. Her sentence was suspended and she was placed on probation.

## ISSUES

Ware raises essentially two issues:
1. Was the evidence sufficient to support her conviction of neglect of a dependent, a class D felony?
2. Is the statute under which she was convicted unconstitutionally vague?

## DECISION

ISSUE ONE—Was the evidence sufficient to support Ware's conviction of neglect of a dependent, a class D felony?

PARTIES' CONTENTIONS—The statute under which Ware was charged and convicted provides in relevant part that "[a]

person having the care of a dependent ... who *knowingly* or intentionally ... [p]laces the dependent in a situation that may endanger his life or health ... commits neglect of a dependent, a class D felony." IC 35–46–1–4(a)(1) (emphasis supplied) [hereinafter referred to as the child neglect statute]. Emphasizing the lack of proof that she was aware of Smith's brutal tendencies before he attacked her child on July 27, Ware assails the evidence as being insufficient to establish she *knowingly* placed M. W. in a dangerous situation by leaving her in Smith's care on that date. The State responds that Ware was not convicted on the basis of her conduct on the day of the rape. She learned of the rape after it occurred, yet continued to permit Smith to frequent the home that she and M. W. shared. By so doing, says the State, Ware knowingly violated the child neglect statute.

CONCLUSION—The evidence was sufficient to support Ware's conviction of neglect of a dependent, a class D felony.

To definitively determine the outcome of this case, we must decide the proper construction of the word "knowingly" as that word appears in the child neglect statute. Does "knowingly" mean neglect in terms of an objective or a subjective standard?[1] We conclude that the legislature intended the latter.

The current child neglect statute provides as follows:

(a) *A person having the care of a dependent,* whether assumed voluntarily or because of a legal obligation, *who knowingly or intentionally;*

(1) *Places the dependent in a situation that may endanger his life or health;*

(2) Abandons or cruelly confines the dependent;

(3) Deprives the dependent of necessary support, or;

(4) Deprives the dependent of education as required by law; *commits neglect of a*

1. An objective standard of conduct is external, formulated with reference to community values. A subjective standard, by contrast, refers to the judgment or perceptions of the particular actor. *W. Prosser, Handbook of the Law of Torts* 150 (4th ed. 1971).

*dependent, a class D felony.* However, except for a violation of clause (4), the offense is a class B felony if it results in serious bodily injury. It is a defense that the accused person, in the legitimate practice of his religious belief, provided treatment by spiritual means through prayer, in lieu of medical care, to his dependent.

IC 35–46–1–4 (emphasis supplied).

Prior to the passage of the present statute in 1976, a precursor child neglect statute specified in relevant part that

[n]eglect of a child shall consist in any of the following acts, by anyone having the custody or control of the child;

. . . .

(b) failure to do or permit to be done any act necessary for the child's physical or moral well-being . . . .

Ind.Ann.Stat. § 10–813(b) (1956).

Having no legislative directive as to the degree of culpability required for the commission of child neglect under this prior law, the Indiana Supreme Court in 1967 defined the offense by an objective standard: "Neglect is the want of reasonable care—that is, the omission of such steps as a reasonable parent would take, such as are usually taken in the ordinary experience of mankind:" *Eaglen v. State,* (1967) 249 Ind. 144, 150, 231 N.E.2d 147, 150.

Then in 1976, some nine years later, the present child neglect statute, IC 35–46–1–4, was enacted. It enumerates, as indicated above, two possible degrees of culpability— "knowingly" or "intentionally." Also during the 1976 session, the legislature, as part of a new legislative scheme, passed a provision defining three degrees of culpability for offenses—"intentionally," "knowingly," and "recklessly." IC 35–41–2–2 [hereinafter referred to as the culpability definition statute]. This statute has been described as "the first effort to provide a uniform and consistent definition of the degrees of culpability." West's AIC 35–41–2–2, commentary by Charles A. Thompson. It defines "knowingly" in these terms: "[A] person engages in conduct 'knowingly' if, when he engages in the conduct, he is

aware of a high probability that he is doing so." IC 35–41–2–2(b). This definition appears to require the use of a subjective standard to determine whether one accused of crime has acted "knowingly." The Indiana Supreme Court has not yet had occasion to interpret the term as codified, but support for a subjective definition may be found in supreme court decisions under the common law: "Generally speaking, the term 'knowingly' in a criminal proceeding imports that the accused person knew what he was about, and, possessing such knowledge, proceeded to commit the crime of which he is charged." *State v. Bridgewater,* (1908) 171 Ind. 1, 8, 85 N.E. 715, 718. *Accord, State v. Williams,* (1894) 139 Ind. 43, 38 N.E. 339. Furthermore, this court has had one opportunity to interpret the term since the culpability definition statute was passed. In *Clark v. State,* (1980) Ind. App., 400 N.E.2d 172, 174, an appeal from a conviction of possession of a controlled substance, the first district concluded that "knowingly" imports subjective awareness on the part of the actor:

It is true that the statute provides that it is an offense to "knowingly" possess the controlled substances designated. The term "knowingly" as used in criminal statutes imports that the accused person knew what he was about, and, possessing such knowledge, proceeded to commit the crime of which he is charged. *State v. Bridgewater,* (1908) 171 Ind. 1, 85 N.E. 715; *State v. Williams,* (1894) 139 Ind. 43, 38 N.E. 339.

So are we bound by an Indiana Supreme Court decision prior to 1976 utilizing an objective standard in construing the former child neglect statute, or does the subjective definition of "knowingly" appearing in the culpability definition statute prevail? We are extricated from our dilemma by several maxims of statutory construction.

█ Statutes passed during the same legislative session should be interpreted as harmonious, so as to give effect to each. *State ex rel. Indiana State Board of Finance v. Marion County Superior Court,* (1979) Ind., 396 N.E.2d 340; *Coghill v.*

*Badger,* (1981) Ind.App., 418 N.E.2d 1201. There is a presumption that a statutory amendment was intended to change the existing law. *Gingerich v. State,* (1950) 228 Ind. 440, 93 N.E.2d 180; *H. W. K. v. M. A. G.,* (1981) Ind.App., 426 N.E.2d 129; *Johnson v. Wabash County,* (1979) Ind.App., 391 N.E.2d 1139. And when the legislature provides a definition of a word, courts are bound by it, regardless of other possible meanings attributable to the word. *Department of State Revenue v. Crown Co.,* (1952) 231 Ind. 449, 109 N.E.2d 426; *State v. Grange,* (1929) 200 Ind. 506, 165 N.E. 239; *Bettenbrock v. Miller,* (1916) 185 Ind. 600, 112 N.E. 771.

The culpability definition statute and the child neglect statute were passed during the same legislative session. The effect of the former—which defines "knowingly" in subjective terms—is to impose upon Indiana courts a consistent and uniform system for defining the *mens rea* of the crimes enumerated in the Indiana Code. The principal difference between the previous child neglect statute and the current version is the inclusion in the new statute of two possible degrees of mental intent—"knowingly" or "intentionally." Thus, we can only conclude that the legislature, by inserting degrees of mental intent in the child neglect statute and succinctly defining those degrees in the culpability definition statute, intended to effect a change in the former statute and thereby bind the courts. In order to be convicted of knowingly neglecting a dependent under IC 35–46–1–4(a)(1), the accused must have been subjectively aware of a high probability that he placed the dependent in a dangerous situation. Our conclusion promotes uniformity, the obvious goal of the culpability definition statute, without defeating the goal of the child neglect statute, to-wit, protection of children. Requiring proof of subjective knowledge in applying subsection (a)(1) of the child neglect statute is hardly inconsistent with the legislative objective.

Unfortunately, our holding is at odds with that of the first district in *Smith v. State,* (1980) Ind.App. 408 N.E.2d 614 (transfer not sought), the only previous decision to examine the child neglect statute in relation to the culpability definition statute. The court in *Smith* rejected a subjective definition of the term "knowingly" as used in subsection (a)(1) of the child neglect statute and elected to retain the objective standard applied under the former statute: "The insertion in the statute of the words 'knowingly' or 'intentionally' require the State only to prove that the defendant parent was aware of facts that would alert a reasonable parent under the circumstances to take affirmative action to protect the child." *Id.* 408 N.E.2d at 621. Our position stresses certain principles of statutory construction which we think represent legislative intent.

■ Turning to the facts of this case, the evidence most favorable to the judgment amply supports the fact finder's conclusion that Ware knowingly neglected her dependent child. Ware's admonishment to M. W. on the way to the hospital "not to tell it was Gary [Smith]," *record* at 113, compels the conclusion that Ware knew Smith had raped her daughter. Even after a medical examination confirmed that M. W. had gonorrhea, a disease Ware herself had contracted from Smith, Ware continued to permit Smith to spend three or four nights a week in the apartment she shared with her daughter, thereby exposing the child to prolonged emotional distress and to the danger of a renewed attack.

ISSUE TWO—We have not included the parties' contentions concerning Ware's constitutionally based claim because this issue is waived. Ware failed to challenge the constitutionality of the child neglect statute at trial. Our supreme court has frequently said that any question concerning the constitutionality of a statute must be raised at trial in order to be reviewable on appeal. *E.g., Lee v. State,* (1959) 239 Ind. 232, 156 N.E.2d 78; *Chism v. State,* (1932) 203 Ind. 241, 179 N.E. 718.

Judgment affirmed.

SHIELDS and SULLIVAN, JJ., concur.