Marie EVANS, Personal Representative
of the Estate of Oscar Evans,
Appellant (Plaintiff below),

v.

YANKEETOWN DOCK CORPORATION,
Appellee (Defendant below).

No. 87S04–8604–CV–340.

Supreme Court of Indiana.

April 15, 1986.

Rehearing Denied June 5, 1986.

Rodney H. Grove, Evansville, for appellant.

Gaylon L. Clark, Clark, Statham, McCray, Thomas & Krohn, Evansville, for appellee.

## ON CIVIL PETITION TO TRANSFER

DICKSON, Justice.

This case is presented on appellant's Petition to Transfer. The petition is granted. The opinion of the Court of Appeals reported at 481 N.E.2d 121, is vacated.

The parties' briefs accepted the following underlying facts. Oscar Evans and Harlan Miller were both employees of Yankeetown Dock Corporation. On the morning of June 1, 1977, they were both to be at their work stations at 7:15 a.m. Oscar had arrived at Yankeetown that morning at the usual time, and was drinking coffee with fellow employees in an area of the main repair shop of the Yankeetown premises. The area was equipped with picnic tables and provided by Yankeetown for the use of its employees in accordance with the National Bituminous Coal Wage Agreement of 1974. It was customary for Yankeetown employees to gather in this area a few minutes before they were to report to their work stations, and to change into their work clothes. Both Harlan Miller and Oscar Evans had a distance of several hundred yards to walk to reach their work stations from the employee eating area. Between 6:50 and 7:00 a.m., before Oscar Evans had changed into his work clothes, Harlan Miller, apparently due to an alcoholic paranoid delusional state wholly unrelated to his employment, fatally shot Oscar Evans. No claim for workmen's compensation benefits was filed.

Plaintiff-appellant Marie Evans (Evans), personal representative of the Estate of Oscar Evans, deceased, brought a wrongful death action against Yankeetown Dock Corporation (Yankeetown) alleging in substance that Yankeetown, as employer of Harlan Miller, negligently permitted Miller to come upon the Yankeetown premises and "discharge a firearm at the Plaintiff's decedent as he sat on the employer's premises awaiting to begin his work." The trial court subsequently granted summary judgment for Yankeetown based solely upon the exclusivity of remedy provision. Ind. Code § 22-3-2-6, of the Indiana Workmen's Compensation Act.

The Court of Appeals for the Fourth District issued a thoughtful opinion seeking to address, resolve, and simplify the persistent difficulties plaguing the courts in their attempts to interpret and apply certain provisions of the workmen's compensation statutes. In substance, the Court of Appeals reinterpreted the applicable statutes as granting to the Industrial Board exclusive jurisdiction of all claims by an employee against his employer for injury or death by chance, regardless whether arising out of or in the course of employment, whereupon it would then be the function of the Industrial Board to determine whether to grant or deny workmen's compensation benefits, depending on whether

or not the injury or death arose out of and in the course of employment. Applying this construction, the Court of Appeals found that the Industrial Board would have exclusive jurisdiction over claims by Evans against Yankeetown, and affirmed the trial court.

The twenty-eight issues claimed by Evans's petition to transfer may be regrouped as follows:

1. Does the exclusive Industrial Board jurisdiction require that the death or injury occur not only "by accident" but also "arising out of and in the course of employment?"

2. Does the term "by accident" as used in the Indiana Workmen's Compensation Act, require an unexpected event?

3. Was summary judgment proper under the facts?

▮ Before addressing these specific issues, we observe that the present system of workmen's compensation in Indiana was essentially established with the Workmen's Compensation Act of 1929. Retention of this basic system by our General Assembly reflects that broad public policies continue to be served thereby. As recognized in 2A Larson, *The Law of Workmen's Compensation*, sec. 65.11, pp. 12–1—12–6 (1983):

> Once a workmen's compensation act has become applicable ... it affords the exclusive remedy for the injury by the employee or his dependents against the employer and insurance carrier. This is part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts.

A similar view is also expressed in Prosser, *Handbook of the Law of Torts*, sec. 80, pp. 531–532 (4th ed., 1971):

> When an injury to a servant is found to be covered by a workmen's compensation act, it is uniformly held that the statutory compensation is the sole remedy, and that any recovery at common law is barred. It is recognized that this remedy

is in the nature of a compromise, by which the workman is to accept a limited compensation, usually less than the estimate which a jury might place upon his damages, in return for an extended liability of the employer, and an assurance that he will be paid. Accordingly, even though his damages are partly of a nature not compensated under the act, he has no cause of action based on the negligence of his employer.

The continuing vitality of a workmen's compensation system not only serves the interests of the injured worker, it also benefits the business community in providing protection from large verdicts and by permitting the business community to more easily predict, quantify and plan for anticipated costs from employee injuries.

▮ The right and responsibility to determine these public policies, and to adopt, improve, refine, and perfect legislation directed thereto, falls not to us but to the legislature. Our role is to construe and apply these enactments so as to carry out legislative intent. Public policy purposes benefiting both business and labor have thus been served by the long-standing approach of Indiana courts to liberally construe workmen's compensation laws. *See, Marshall v. Tribune-Star Publishing Co.* (1968), 142 Ind.App. 556, 236 N.E.2d 508, *affirmed* (1969), 251 Ind. 557, 243 N.E.2d 761; *Pollock v. Studebaker Corp.* (1952), 230 Ind. 622, 105 N.E.2d 513; *Blue Ribbon Pie Kitchens Inc. v. Long* (1952), 230 Ind. 257, 103 N.E.2d 205; *Guevara v. Inland Steel Co.* (1949), 120 Ind.App. 47, 88 N.E.2d 398, *trans. denied* (1950), 228 Ind. 135, 90 N.E.2d 347 (Emmert, J., dissenting); *Goldstone v. Kozma* (1971), 149 Ind.App. 626, 274 N.E.2d 304; *Prater v. Indiana Briquetting Corp.* (1969), 253 Ind. 83, 251 N.E.2d 810; *Talas v. Correct Piping Co., Inc.* (1982), Ind., 435 N.E.2d 22; *Sam Winer & Co. v. Spelts* (1976), 169 Ind.App. 392, 348 N.E.2d 670.

▮ However, we are not free to construe a statute which is unambiguous, as noted in *Spelts*, supra, quoting from *J.W.*

*Jackson Realty Co. v. Hertzberger* (1942), 111 Ind.App. 432, 40 N.E.2d 379:

> The rule concerning liberal construction, in favor of the appellee, of the compensation law has no application in a case where there is no room for construction. Under the rule of liberal construction in favor of the employee to carry out the humane purposes of the Act, the Industrial Board and this court are not entitled to distort the law so that compensation will be granted in violation of specific statutory provisions.

169 Ind.App. at 395, 348 N.E.2d at 673. Our ability to effect legislative purpose is necessarily limited to the language of the statutes. We recognize the wisdom declared in *Kunkalman v. Gibson* (1908), 171 Ind. 503, 509–10, 84 N.E. 985, 987, *reh. denied* (1909), 171 Ind. 511, 86 N.E. 850, as follows:

> Perhaps no better statement can be found of the doctrine that exceptions should not ordinarily be declared by the courts where the legislature speaks broadly than is contained in *City of Pittsburgh v. Kalchthaler* (1886), 114 Pa.St. 547, 552, 7 Atl. 921, wherein the supreme court of Pennsylvania said: "We think it is always unsafe to depart from the plain and literal meaning of the words contained in legislative enactments out of deference to some supposed intent, or absence of intent, which would prevent the application of the words actually used to a given subject. Such a practice is really substituting the theories of a court, which may, and often do, vary with the personality of the individuals who compose it, in place of the express words of the law as enacted by the lawmaking power. It is a practice to be avoided. It has been condemned by many test-writers and by many courts. Occasionally it has been departed from, but the path is a devious and dangerous one, which ought never to be trodden, except upon considerations of the most convincing and the gravest moment."

## I

■ The principal statute relied upon by both the trial court and the Court of Appeals is Ind. Code 22–3–2–6, which we find to be clear and unambiguous:

> The rights and remedies herein granted to an *employee subject to this act on account of personal injury or death by accident* shall exclude all other rights and remedies of *such* employee, his personal representatives, dependents or next of kin, at common law or otherwise, *on account of such injury or death.* (Emphasis supplied.)

Thus, this statute operates to exclude common law rights and remedies of such employees who are "subject to this act on account of personal injury or death by accident." The exclusion applies to all of those rights and remedies on account of "such injury or death" which expressly refers to the prior term "personal injury or death by accident."

■ The terms "injury" and "personal injury" are expressly defined in IC 22–3–6–1(e):

> "injury" and "personal injury" mean only injury by accident arising out of and in the course of the employment and do not include a disease in any form except as it results from the injury.

Thus, if the injury does not occur by accident or if it does not arise out of and in the course of employment, the injury does not fall within "such injury" in IC 22–3–2–6, and the employee is not excluded from his common law rights and remedies. A person is free to use the courts to resolve disputes with someone who may happen to be his employer, so long that the matter in dispute is not an injury "by accident arising out of and in the course of employment." As illustrated by the example presented in the separate opinion of Judge Conover, concurring in result with the Court of Appeals majority opinion, where an off-duty employee is injured when struck by his employer's truck in the middle of town on his day off, the legislature did not intend that the Industrial Board should have jurisdiction.

The opinion of the Court of Appeals rejects the statutory definition of "personal injury" because of the introductory proviso of IC 22–3–6–1, "unless the context otherwise requires." We disagree. As correctly noted by appellant's brief, in *Department of State Revenue v. Crown Development Corp.* (1952), 231 Ind. 449, 109 N.E.2d 426, this Court emphasized:

> The cardinal principle in construing a statute is to ascertain and give effect to the legislative intent, ... and where, in an act it is declared that a term shall receive a certain construction, the courts are bound by that construction ...

231 Ind. at 456, n. 1, 109 N.E.2d at 428, n.1. Likewise, in construing a statute to determine and give effect to the true intent of the legislature, each individual section of a statute must be construed with due regard for all of the other sections of the act, *Park 100 Development Co. v. Indiana Dept. of Revenue* (1981), Ind., 429 N.E.2d 220, 222–23.

Legislative intent is further indicated by IC 22–3–2–5 which recites that an employer and his workmen's compensation insurance carrier shall be liable to any employee and his dependents "for personal injury or death by accident arising out of and in the course of employment." Similarly, IC 22–3–2–2 requires every employer and employee to pay and accept the prescribed compensation for "personal injury or death by accident arising out of and in the course of employment."

For these reasons, we decline to adopt the view of the Court of Appeals that the phrase "arising out of and in the course of employment" should be ignored as surplusage. We hold that IC 22–3–2–6 excludes all rights and remedies of an employee against his employer for personal injury or death if the following three statutory jurisdictional prerequisites are met:

A.   personal injury or death by accident;

B.   personal injury or death arising out of employment;

C.   personal injury or death arising in the course of employment.

Actions for employee injuries or death which do not meet each of these prerequisites are not excluded, and may be pursued in the courts.

## II

Appellant Evans urges that the opinion of the Court of Appeals erroneously interpreted the term "by accident" as used in the workmen's compensation statutes. She relies on language from *Calhoun v. Hillenbrand Industries* (1978), 269 Ind. 507, 381 N.E.2d 1242, stating that to show an accident there must be some untoward or unexpected event. Indiana courts have long wrestled with the unexpected-event/unexpected-result dilemma, both before and since *Calhoun*.[1]

Professor Larson notes that the "injury by accident" terminology was copied from the British, where it was already clearly settled that where a cause was routine and not accidental, but the effect on the employee was unexpected and therefore accidental, a claim was compensable. Larson, *supra*, § 38.10, p. 719. He then describes

---

1.   *Evans v. Yankeetown Dock Corp.*, Court of Appeals, *supra*, (Conover, J., concurring with opinion); *Kerchner v. Kingsley Furniture Co.* (1985), Ind.App., 478 N.E.2d 74 (Ratliff, P.J., concurred with opinion); *Young v. Smalley's Chicken Villa, Inc.* (1984), Ind.App., 458 N.E.2d 686 (Neal, J., concurring with opinion); *Lovely v. Cooper Industrial Products, Inc.* (1981), 429 N.E.2d 274 (Ratliff, J., dissenting with opinion); *Calhoun, supra,* 269 Ind. at 511–12, 381 N.E.2d at 1244–45 (DeBruler, J., dissenting with opinion; Hunter, J., concurring in dissent); *Ellis v. Hubbell Metals, Inc.,* (1977), 174 Ind.App. 86, 366 N.E.2d 207 (Hoffman, J., dissenting with opinion); *Inland Steel Co. v. Almodovar* (1977), 172 Ind.App. 556, 361 N.E.2d 181 (Buchanan, J., dissenting with opinion), *transfer denied,* 266 Ind. 638, 366 N.E.2d 169 (Pivarnik, J., dissenting to denial of transfer with opinion; Prentice, J., concurring in dissent); *Rivera v. Simmons Co.* (1975), 164 Ind.App. 381, 329 N.E.2d 39 (White, J., concurring with opinion; Sullivan, J., concurring with opinion); *Estey Piano Corp. v. Steffen* (1975), 164 Ind.App. 239, 328 N.E.2d 240 (Buchanan, J., concurring with opinion; White, J., concurring in result); *Chestnut v. Coca Cola Bottling Co.* (1969), 145 Ind.App. 504, 251 N.E.2d 575 (White, J., dissenting with opinion; Sharp, J., concurring in result).

the ensuing lack of consistency seen in current decisions in the United States:

> Yet, in spite of the well-settled doctrine that a legislature, in adopting a statute which has already been authoritatively construed, is deemed to have adopted the construction, a long battle has been fought in the United States on this exact issue, and is still being fought.

> The issue here, in theoretical terms, is whether a court in construing "by accident" will require an accidental cause or will be satisfied with an accidental result. In practical terms, the issue is whether injury is accidental when it is the unexpected consequence of the usual exertion or exposure of the particular employee's job: A deliveryman's routine heavy lift produces a hernia; a freight loader accustomed to handling heavy boxes suffers a cerebral hemorrhage while lifting a normal-sized box; a policeman runs after a fugitive and has a coronary thrombosis; a fireman becomes encased in ice while fighting a fire in winter and dies of pneumonia.

> As a matter of theory, it might be thought that each jurisdiction would take its stand on this cause-result issue, so that one could make up a neat list saying: The following jurisdictions accept as accidental any routine exertion or exposure leading to unexpected harm, and the following do not, and therefore the one or the other is the majority rule. Unfortunately this cannot be done. The reason is that the two parts of the accident concept—unexpectedness and definiteness—do not in practice seem to remain distinct. Logical or not, a usual exertion leading to a clean-cut result such as a rupture may be held accidental while an identical usual exertion leading to some more generalized result such as "heart failure" may not. Similarly, a usual exposure causing sunstroke or freezing may be held accidental while an identical usual exposure leading to pneumonia may not. The preponderance of the authorities on whether the effects of the usual conditions of employment can be considered accidental varies according to the definiteness of the harm produced.

Larson, *supra*, § 38.20, 7–19—7–20. Despite these problems, Larson expresses the general rule as:

> The "by accident" requirement is now deemed satisfied in most jurisdictions either if the cause was of an accidental character or if the effect was the unexpected result of routine performance of the claimant's duties.

Larson, *supra*, § 38.10, 7–18.

We feel that this long-standing controversy can be significantly reduced and perhaps eliminated by resorting to the clear and express language of the enactment. The statutory language "by accident" should be applied literally, rather than reinterpreted by inserting the article "an" as if written "by *an* accident." In this way both the statutory language and the legislative purposes will be served. As cited by the Court of Appeals below, we agree with Judge White in *Inland Steel Co. v. Almodovar* (1977), 172 Ind.App., 556, 361 N.E.2d 181:

> Perhaps it is a mistake to attempt to define "accident" when what we are concerned with is not the definition of the word standing alone but the concept expressed in the phrase: "injury by accident". If we accept, which we do, the concept expressed in *Indian Creek* then "injury by accident" is the equivalent of "accidental injury". Which is to say that "injury by accident" is not the equivalent of "injury caused by an accident" or "injury resulting from an accident". As the Harvard Law Review article [Bohlen, "A Problem in the Drafting of Workmen's Compensation Acts," 25 *Harvard L.Rev.* 328 (1912) ] quoted *supra* in the exerpt from *Indian Creek* says "[t]he test as to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing."

172 Ind.App. at 564–65, 361 N.E.2d at 187.

■ The underlying issue in *Calhoun* was causation. The opinion correctly stated:

It is not sufficient to merely show that a claimant worked for the employer during the period of his life in which the disability arose.

269 Ind. at 511, 381 N.E.2d at 1244. The necessary existence of a causal connection between the injury and the employment is clearly necessary to qualify for workman's compensation benefits. *Donahue v. Youngstown Sheet & Tube Co.* (1985), Ind., 474 N.E.2d 1013; *Bowling v. Fountain County Highway Dept.* (1981), Ind.App., 428 N.E.2d 80. However, the issue of causation may be addressed when applying the statutory term "arising out of." When determining whether the exclusive workmen's compensation remedy applies to incidents of on-the-job occurrence of pre-existing injury or disease, the resolution of these issues need not be decided by interpretation of "by accident," but rather by application of "arising out of and in the course of employment."

■ We therefore hold that the statutory term "injury or death by accident," as used in the workmen's compensation laws, means unexpected injury or death. To the extent this clarification is inconsistent with prior holdings, they are overruled.

### III

■ The remaining issue is whether the trial court was correct in granting summary judgment under the facts presented. In accordance with our resolution of the foregoing issues, Evans's wrongful death action would not be barred by the exclusive workmen's compensation remedy unless the uncontroverted facts establish that the death was (a) by accident, (b) arising out of employment, and (c) arising in the course of employment. Summary judgment should not be granted if facts or inferences give rise to any genuine issue of material fact. All doubts must be resolved in favor of Evans as the party opposing summary judgment. *Woodward Insurance Inc. v. White* (1982), Ind., 437 N.E.2d 59.

The trial court correctly determined that Oscar Evans died by accident. From the uncontroverted facts of the incident, it is clear that Oscar did not intend or expect to be injured or killed as he was drinking his coffee at the employees' eating area.

To support her position that the exclusive remedy of workmen's compensation does not apply, Evans contends that the death did not "arise out of" the employment. An injury arises out of the employment when there is a causal relationship between the injury and the employment. *Donahue, supra.*

Significantly, however, Evans's wrongful death action against Yankeetown requires the existence of this employment relationship. The complaint alleges negligence of Yankeetown, as employer of Oscar Evans and Harlan Miller. The gravamen of her tort action is the alleged breach of duty of Yankeetown, as employer. The viability of Evans's wrongful death action is predicated upon a causal connection between the death and the employment, *i.e.* that the death arose out of employment. Evans cannot now contend otherwise.

Furthermore, we find no Indiana cases, and appellant cites none, upon the question of whether injuries suffered at the hands of an insane fellow-employee are compensable. In analyzing the compensability of injuries resulting from assaults, Larson, *supra*, § 11.30 uses three classifications: "those that have some inherent connection with the employment, those that are inherently private, and those that are neither, and may therefore be called 'neutral' ...." His neutral category comprises assaults which include attacks by "lunatics" and "drunks." According to Larson, a growing majority of jurisdictions consider such neutral assaults to be within the ambit of workmen's compensation. This is particularly true of injuries from assaults by insane co-employees.

Applying the uncontroverted facts and inferences, and resolving factual doubts in favor of Evans, it nevertheless is clear that the trial court correctly determined that the death arose out of the employment.

Finally, as to whether the death arose in the course of employment, the issue is con-

clusively determined by plaintiff's interogatory answers:

> Question 31. State the place, time, date and nature of the occurrence which caused the injuries from which the decedent expired.
>
> ANSWER: Yankeetown Dock; was at work ready to start his job; Harlan Miller, also an employee of Yankeetown Dock Corporation, sneaked up on him, shot him five times and he died within minutes of the shooting which occurred at 7:00 a.m. approximately.
>
> Question 32. Was the decedent in the course of employment by any person at the time of death?
>
> ANSWER: Yes—Yankeetown Dock Corporation.

Additionally, Indiana courts have recognized that the workmen's compensation remedies can apply to injuries received before or after work. In *Ward v. Tillman* (1979), 179 Ind.App. 626, 386 N.E.2d 1003, a tort action between co-employees, the parties agreed that the plaintiff was leaving from work and the defendant arriving, when the accident occurred. Finding the facts not disputed and affording but a single inference, the court affirmed summary judgment for the defendant, finding the workmen's compensation act applicable. Similarly, in *Lona v. Sosa* (1981), Ind.App., 420 N.E.2d 890, the court said:

> While the course of employment embraces a reasonable interval before and after working hours if the employee is on the premises engaged in preparatory or incidental activity reasonably related to his work, [citation omitted] what constitutes a reasonable interval depends on the length of time involved, the circumstances occasioning the interval, and the nature of the employee's activity.

420 N.E.2d at 894. Accidents occurring in the performance of acts which are reasonably necessary to the life and comfort of a workman, although personal, are incidental to employment and compensible under workmen's compensation. *Skinner v. Martin* (1983), Ind.App., 455 N.E.2d 1168.

 In the case at bar, it is undisputed that Oscar Evans arrived at work at the usual time, paused before commencing his duties to drink coffee with fellow employees, as was customary, at the eating area provided by Yankeetown for the employees. Thus, in addition to plaintiff's admissions in the interogatory answers, we find that the uncontroverted facts lead to a single inference that Oscar Evans was in the course of his employment at the time of the accident, as determined by the trial court.

We conclude that the trial court correctly determined that the death of Oscar Evans occurred by accident arising out of and in the course of his employment, and that therefore the resulting wrongful death action was barred by IC 22-3-2-6. The trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and SHEPARD, JJ., concur.