Charles GORDON, Appellant–Plaintiff,

v.

**CHRYSLER MOTOR CORPORATION
and Michael L. Harris, Appellees–
Defendants.**

No. 49A02–9106–CV–270.

Court of Appeals of Indiana,
Second District.

Feb. 11, 1992.

Rehearing Denied April 7, 1992.

T.A. Shula, Indianapolis, for appellant-
plaintiff.

Kenneth T. Roberts, Kevin L. Scionti,
Roberts & Bishop, Indianapolis, for appel-
lees-defendants.

SHIELDS, Judge.

Charles Gordon appeals the trial court's grant of summary judgment in favor of Chrysler Motor Corporation.

We affirm.

## ISSUES

We restate the issues as follows:

1. Whether the Worker's Compensation Act (Act) provides Gordon his exclusive remedy against Chrysler.

2. Whether the intentional tort exception precludes the otherwise exclusive operation of the Act.

## FACTS

Chrysler Motor Corporation (Chrysler) employed Gordon as an assembly line worker and Michael L. Harris as Gordon's foreman at its foundry facility located at 1100 South Tibbs Avenue in Indianapolis. On September 30, 1986, Harris summoned Gordon to his office to question him about an unauthorized break Gordon had taken. An argument between Harris and Gordon escalated to a point where Harris struck Gordon in the face, causing serious injuries and subsequent permanent disabilities. Chrysler fired both Harris and Gordon following the incident, although Gordon was reinstated.

Gordon filed a tort action against Harris and Chrysler and made a claim for worker's compensation; both claims sought compensation for injuries Gordon sustained in the altercation. The trial court granted Chrysler's motion for summary judgment; Gordon appeals.

## DISCUSSION

On review of the trial court's grant of summary judgment, this court must use the same standard as the trial court and consider the pleadings, depositions, affidavits, and admissions in a light most favorable to the non-moving party. *Parke v. First National Bank of Elkhart* (1991),

Ind.App., 571 N.E.2d 1317, 1319. Summary judgment is appropriate only if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Smith v. Methodist Hospital of Indiana, Inc.* (1991), Ind.App., 569 N.E.2d 743, 745.

### I.

Indiana Code 22–3–2–6 (1988) limits the rights and remedies of an employee seeking a compensatory remedy against his employer for personal injuries to the exclusive provisions of the Act when three statutory jurisdictional requirements are met:

1. personal injury or death by accident;

2. personal injury or death arising out of employment;

3. personal injury or death arising in the course of employment.

*Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, 973; *see also* IC 22–3–6–1(e) (1991 Supp.) (defining personal injury as "injury by accident arising out of and in the course of the employment....").

Gordon claims the Act's three jurisdictional prerequisites cannot be met in the instant case and, therefore, the trial court's grant of summary judgment to Chrysler is erroneous because he may seek any civil remedies available to him. For clarity and convenience, we analyze each element separately.

### A. Personal Injury "By Accident"

■ Gordon argues that because he "expected" Harris's verbal and physical outburst, a finding that the event occurred "by accident" is precluded. Gordon claims he anticipated the impending assault after he learned of the reason for the meeting due to Harris's "violent reputation for a pattern of abuse and profanity ... among Chrysler employees that Foreman Harris supervised." Appellant's Brief at 12. Thus, Gordon asserts he anticipated the beating because his "previous knowledge formed his state of mind." *Id.*

In *Yankeetown* our supreme court concluded the statutory phrase "by accident"

should be construed literally and not be reinterpreted to mean "by *an* accident." *Id.* at 974 (emphasis in original). The court then explained that an injury by accident under the worker's compensation laws is an *unexpected* injury, i.e., an injury that the sufferer did not expect to occur. *Id.* at 975. Thus, the supreme court refers to the unexpectedness of the injury, not the unexpectedness of the behavior causing or resulting in the injury. Accordingly, an unexpected injury need not occur on a single occasion. *See, e.g., Hansen v. Von Duprin, Inc.* (1987), Ind., 507 N.E.2d 573 (Mental and emotional injuries suffered by an employee whose fear of guns due to a gunshot wound inflicted by her former husband prompted supervisor's consistent "horseplay," such as intentionally dropping books behind her to simulate the sound of a gun shot, firing a cap gun, and approaching her from behind and jabbing her in the ribs as if holding a gun, may be accidental although they did not result from single occurrence.). A typical worker's compensation case would involve an employee whose work-related duties include the continual lifting of heavy boxes—behavior which the employee reasonably could expect to cause future physical problems. However, the employee cannot reasonably expect the particular injuries he suffers; lifting heavy boxes potentially could cause injuries ranging from an occasional back ache to a cerebral hemorrhage.

Thus, an injured worker's state of mind is generally irrelevant except when establishing a bar to compensation, e.g., an employee who intentionally self-inflicts a wound (or encourages another to wound him or her) in an illegal attempt to obtain monetary compensation that he or she is not entitled to under the confines of the Act.[1] Accordingly, in *Fields v. Cummins*

*Employees Federal Credit Union* (1989), Ind.App., 540 N.E.2d 631, where an employee filed a tort action against her employer company for negligently retaining her supervisor who had sexually harassed her on several separate occasions, this court rejected the employee's argument that although she had not foreseen the initial confrontation, subsequent repeated assaults lost their unexpected characteristic and thus could not be considered accidental. Relying upon *Hansen,* this court held the several incidents of harassment could still fulfill the Act's first statutory prerequisite.

Therefore, Gordon's argument contravenes the supreme court's "unexpected injury" definition. Gordon's claim he anticipated the beating as a result of his "previous knowledge" (established from rumors of Harris's abusive reputation) cannot, as a matter of law, eradicate the "unexpectedness" of Gordon's injury. The altercation between Gordon and his foreman is an "expected" incident because fist fights are an expected occurrence among co-workers. *See, e.g., Skinner v. Martin* (1983), Ind. App., 455 N.E.2d 1168. Assuming Gordon's "anticipation" reasonably may have caused him to expect a confrontation, perhaps resulting in being struck and suffering a red face or being knocked to the floor, no reasonable employee would expect injuries resulting in his disability.

The trial court did not err in determining that as a matter of law Gordon's injury occurred "by accident," thus satisfying the first requirement for leaving a compensatory relief claim solely under the auspices of the Act.

### B. Personal Injury "Arising Out of Employment"

Gordon argues he did not know or foresee beatings by Harris as included in a

---

**1.** IC 22–3–2–8 sets forth the situations constituting effective bars to compensation under the Act:

No compensation is allowed for an injury or death due to the employee's knowingly self-inflicted injury, his intoxication, his commission of an offense, his knowing failure to use

a safety appliance, his knowing failure to obey a reasonable written or printed rule of the employer which has been posted in a conspicuous position in the place of work, or his knowing failure to perform any statutory duty. The burden of proof is on the defendant.

Chrysler assembly line job, and thus, no reasonable person could consider his injuries as having arisen out of his employment.

An injury "arises out of employment" when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *Yankeetown*, 491 N.E.2d at 975. This causal relationship is established when a reasonably prudent person considers a risk to be incidental to the employment at the time of entering into it or when the facts indicate a connection between the conditions under which the employee works and the injury. *Fields*, 540 N.E.2d at 635.

However, we do not reach the merits of Gordon's argument.[2] Gordon's cause of action against Chrysler relies upon an employment relationship to establish Chrysler's duty to Gordon.[3] Thus, because his cause of action is predicated upon a causal connection between his alleged injuries and his employment relationship, he is estopped from asserting the lack of a causal nexus. *See Yankeetown*, 491 N.E.2d at 975; *Fields*, 540 N.E.2d at 635; *see also Shelby v. Truck & Bus Group Div. of General Motors Corp.* (1989), Ind.App., 533 N.E.2d 1296 (court held employee's claim against employer company and supervisor for injuries sustained when supervisor stuck hot metal rod into employee's groin area arose out of and in the course of employment).

The trial court did not err in determining a genuine issue of fact did not exist as to the existence of the Act's second jurisdictional prerequisite.

### C. Personal Injury "Arising In The Course of Employment"

■ An injury "arising in the course of employment" refers to the time, place, and circumstances surrounding that injury. *Yankeetown*, 491 N.E.2d at 976. Neither party disputes the determination that Gordon sustained his injuries during business hours and on business premises as a result of an argument concerning his work schedule, thereby fulfilling the third jurisdictional prerequisite of the Act.

### II.

■ Gordon argues that even if the Act's jurisdictional requirements are met, the intentional tort exception precludes application of the Act. The intentional tort exception requires that Harris acted as Chrysler's alter ego or upon Chrysler's direct orders and that Chrysler intended Gordon to suffer harm. *National Can Corp. v. Jovanovich* (1987), Ind.App., 503 N.E.2d 1224, 1233.[4]

As the proponent of the exception, Gordon had the burden to establish the existence of facts which would implicate Chrysler in the September 30 incident. He failed to meet this burden. Although Harris pur-

---

**2.** We note there is authority that employment-related assaults are compensable accidents, *see, e.g., Skinner v. Martin* (1983), Ind.App., 455 N.E.2d 1168, and Gordon's injuries occurred in the course of a confrontation with his supervisor over an alleged unauthorized break.

**3.** In his complaint Gordon alleges he was employed by Chrysler at the time of the incident and that he "was in and about the premises.... as an employee, at which time ... Harris, while acting in the course and scope of his employment as a foreman or supervisor ... did violently and repeatedly abuse, strike and assault ... Gordon...." Record at 2–3.

**4.** Pointing to the court's statement in *National Can* that

We see no problem in holding the employer liable for torts he directs or expressly authorizes against his employees: There, the em-

ployer acts with such personal moral culpability that he must be held responsible. Courts fail, however, to explicitly distinguish those cases from incidents where the intentional tort is committed not by the employer personally, but by a foreman or supervisor. Although the foreman may be personally at fault, it does not follow that his moral culpability can be shifted to the employer by simple reliance on the doctrine of *respondeat superior*. It must be shown that the actor was the employer, one acting pursuant to employer's direct order or one acting as the alter ego of the corporation.

*Id.* at 1233 n. 13 (citations omitted), Gordon argues the court established an alternative standard that does not require intent. We disagree. The statement merely discusses one aspect of the standard rather than providing an alternative standard.

posely inflicted the beating, Gordon conceded he did not have a factual basis to allege Chrysler specifically directed or intended his battery by Harris. However, he argues Chrysler's direction and intent may be inferred from its ratification of Harris's conduct which, in turn, may be inferred from Chrysler's failure to promptly discharge Harris.[5] This argument also fails for lack of support; Gordon fails to cite to any evidence which substantiates his allegation that "Foreman Harris continued to work substantially later after the incident on September 30, 1986," Appellant's Brief at 5–6, with a supporting cite to the record.[6] Gordon also argues that Chrysler's direction and intent may be inferred from its failure to discharge Harris although "Chrysler, and its employees knew of Foreman Harris' infliction of violence on employees before the beating of Mr. Gordon." Appellant's Brief at 8. This argument fails for the same reason; Gordon does not cite any portion of the record from which to infer that persons in control of Chrysler had sufficient knowledge of Harris's conduct to support the determination Chrysler ordered and intended Gordon's injury.

Gordon also argues that public policy condemning violent behavior in the workplace warrants a finding in his favor. Although we are sympathetic to his misfortune and do not condone Harris's actions, public policy and the plain language of the statute also demand we adhere to the exclusive remedies provided under the Act.

The trial court properly concluded that Gordon failed to present a factual basis for his claimed intentional tort exception to the Act.

Judgment affirmed.

RATLIFF, C.J., and BUCHANAN, J., concur.

---

**5.** Gordon's claim for negligent retention is barred by the exclusivity provision of the act. *See Fields v. Cummins Employees Federal Credit Union* (1989), Ind.App., 540 N.E.2d 631, 636.

**6.** The affidavit of Johnny Gray states only that he saw Harris "still working at the Foundry" on the day following the attack in question. Record at 21.