**Elaine M. BLADE, Administratrix of the Estate of Charles Joseph Blade, Plaintiff-Appellant,**

v.

**ANACONDA ALUMINUM COMPANY, INC., Defendant-Appellee.**

No. 1–183A7.

Court of Appeals of Indiana, First District.

Aug. 24, 1983.

Stephen L. Trueblood, Bolin, Trueblood & Rennolet, Terre Haute, for plaintiff-appellant.

David W. Sullivan, Cox, Zwerner, Gambill & Sullivan, Terre Haute, Charles F. Hosmer, ARCO Metals Co., Rolling Meadows, Ill., for defendant-appellee.

ROBERTSON, Presiding Judge.

The plaintiff-appellant, Elaine M. Blade, as administratrix of her husband's estate, brought a wrongful death action against Anaconda Aluminum Company, Inc. (Anaconda) to recover damages which resulted from her husband's death in a furnace explosion at Anaconda's plant where he was employed. Blade's complaint alleged that Anaconda had intentionally and with reckless disregard for the safety of its employees:

a. Disconnected the oxygen analyzer alarm bell on the furnace two months before the explosion, but reconnected the same June 11, 1981; [two days after the explosion].

b. Disconnected the safety cooling water to the furnace door and mantels;

c. Failed and refused to shut down the No. 10 furnace which the Defendant

knew had been detonating for two months prior to June 9, 1981;

d. Failed and refused to replace the cracked furnace radiant tubes and relied on welding instead of replacement;

e. Failed and refused to operate the furnace with the exhaust fan running;

f. Ordered the exhaust side of the burner box plugged off on the No. 10 furnace and failed to plug the intake side;

g. Failed to take any steps to prevent raw gas from being dumped into the furnace;

that prior to and on June 9, 1981, Anaconda knew or should have known that injury or death to an employee working at the site of the No. 10 Anneal furnace was substantially certain to follow from the conduct of Anaconda described in items a through g mentioned directly above and the decedent's death was thus the direct and proximate result of the intentional conduct of Anaconda; and that Anaconda's acts were malicious, oppressive and reprehensible.

Appellant's Brief p. 4–5.

The complaint sought both actual and punitive damages.

Anaconda filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Ind.Rules of Procedure, Trial Rule 12(B)(6). The trial court granted the motion stating:

In determining the merits of Anaconda's Motion, the Court is required to accept as true all facts alleged in Blade's Complaint and draw every reasonable inference therefrom in Blade's favor. *Morris v. City of Kokomo,* (1978) 381 N.E.2d 510. The Court also notes the appeal of Blade's attorneys' passionate arguments concerning the unfairness of Anaconda's protection from port [sic] liability by virtue of the "exclusive remedies" provisions of I.C. 22–3–6–2 [sic, I.C. 22–3–2–6] particularly in light of the allegations of the Complaint which we have heretofore said must assume to be true. However, the facts and issues of this case are markedly similar to those set out in *Cunningham v. Aluminum Company of America, Inc.,* (1981) 417 N.E.2d 1186 and therefore must be controlled by the holding of *Cunningham,* Id.

Therefore, it is ORDERED that Anaconda's Motion to Dismiss Blade's Complaint is GRANTED and Blade's Complaint is hereby DISMISSED.

SO ORDERED, this 20th day of October, 1982.

Ind.Code 22–3–2–6 is part of Indiana's Workmen's Compensation Act, Ind.Code 22–3–2–1 *et seq.,* and reads:

22–3–2–6 Rights and remedies of employee exclusive.—

The rights and remedies granted to an employee subject to IC 22–3–2 through IC 22–3–6 [22–3–2–1—22–3–6–3] on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 16–7–3.6 [16–7–3.6–1—16–7–3.6–20]. [Acts 1929, ch. 172, § 6, p. 536; 1982, P.L. 21, § 50.][1]

The focal point of Blade's argument is an attempt to distinguish her claim from *Cunningham* by drawing the inference that Anaconda intentionally injured Mr. Blade. She then concludes *Cunningham* stands for the proposition that intentional torts are not covered by the Workmen's Compensation Act's exclusive remedy section.

We did not address the issue of whether intentional injuries were covered by the Workmen's Compensation Act in *Cunningham.* The issue in *Cunningham* was whether an employee could bring a direct action against his employer for injuries sustained in the course of his employment when the employer had intentionally violated safety statutes. There the plaintiff was injured when he fell into a vat of molten aluminum

---

**1.** Slight amendments were made to this section after Mr. Blade's accident which did not alter the substance of this section.

at his employer's aluminum reclamation plant. Like the case at bar, *Cunningham* was before us as the result of the trial court's granting a motion to dismiss for failure to state a claim upon which relief can be granted. We held the appellant's claim was barred because of the exclusive remedy provision in I.C. 22–3–2–6. We concluded that although it was reasonable to infer that the defendant had intentionally violated safety statutes, such conduct would at most support an inference that the employer was guilty of wrongful and wanton behavior rather than an inference that the employer had intentionally injured the plaintiff. We further concluded that the plaintiff's injury occurred in an accident arising out of and in the course of his employment; therefore his exclusive remedy was the Workmen's Compensation Act.

There is no distinction between *Cunningham* and the case at bar. Although we may infer from Blade's complaint that Anaconda intentionally pursued a course of conduct which jeopardized its worker's safety, no facts were alleged which support an inference that Anaconda intentionally injured Mr. Blade. Discussing this distinction in *Cunningham,* we stated:

> As mentioned above, we cannot reasonably infer from Cunningham's allegations that Barmet engaged in any conduct with the intention that Cunningham be injured thereby. He has alleged only that Barmet deliberately maintained its plant in conditions violative of safety statutes, rules, and regulations. He argues that as such Barmet should have anticipated that he would be injured in the manner in which he was ultimately injured. We disagree.
>
> Dean Prosser has stated, in discussing the concept of intent in tort law, the following: "[T]he mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief of consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but is not classed as an inten-

tional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man would avoid, and becomes a certainty." (Citations omitted.)

417 N.E.2d at 1189–1190.

Anaconda's conduct, assuming Blade's allegations are true, was not exemplary, but it can at most be characterized as grossly negligent or wanton. *Cunningham, supra.* Therefore, Blade's remedies are limited to the Workmen's Compensation Act and the trial court properly granted Anaconda's motion to dismiss.

We note that Blade's counsel has an admirable concern for his client and that he has made some interesting and logical points on appeal; primarily the argument is that the Workmen's Compensation Act was intended to broaden employees' remedies which would otherwise be curtailed by their employers' assertions of common law negligence defenses and that it was not intended to protect employers in cases where such defenses would be inapplicable. Counsel forcefully argues that employers are actually shielded from the full consequences of intentionally maintaining unsafe plants. However, pursuant to the Act as interpreted in *Cunningham,* we cannot adopt this argument. The issue is a matter to be resolved by the General Assembly, if indeed any change is to be made.

Judgment affirmed.

RATLIFF and NEAL, JJ., concur.