881 F.2d 432
 58 USLW 2147, 14 O.S.H. Cas.(BNA) 1153
 Indinar E. BUFORD and Tony Buford, Plaintiffs/Appellants,
v.
AMERICAN TELEPHONE & TELEGRAPH COMPANY; American Telephone
& Telegraph Technologies; Bell Telephone
Laboratories; and Western Electric
Company, Defendants/Appellees.
 No. 88-2899.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 31, 1989.
Decided Aug. 4, 1989.
 
 Frank J. Deveau, Edward W. Harris, III, Sommer & Barnard, Indianapolis, Ind., Daniel S. Mason, Frederick J. Geonetta, Kathleen Styles Rogers, Furth, Fahrner, Bluemle & Mason, San Francisco, Cal., Richard P. Tinkham, Jr., Indianapolis, Ind., for plaintiffs/appellants.
 Mary N. Larimore, Terri A. Czajka, Geoffrey Segar, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., Michael R. Conner, Paula T. Whitfield, Barnes & Thornburg, Indianapolis, Ind., for defendants/appellees.
 Before CUMMINGS, POSNER and FLAUM, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Plaintiffs Indinar and Tony Buford filed this diversity suit in the district court claiming that Indinar suffered long-term effects from exposure to benzene during the course of her employment as a lab technician at defendant Bell Telephone Laboratories' (BTL), Shadeland, Indiana facility, and that Tony experienced a loss of consortium due to his wife's illness. The district court granted summary judgment to the defendants on the ground that plaintiffs' common law remedies were preempted by the Indiana Occupational Diseases Act. For the reasons discussed below, we affirm.
 
 I.
 
 2
 In 1981, plaintiff Indinar Buford obtained a position as a lab technician at defendant BTL's Shadeland, Indiana facility. During the course of her employment, plaintiff was required to perform a variety of tasks including flame retardancy testing of telephone cords. Flame retardancy testing involves suspending a telephone cord over a flame for a specified period of time. According to the allegations of plaintiffs' complaint, which, for purposes of this case we must accept as true, Mrs. Buford was required to perform this task in an unventilated room, was not provided with adequate safety equipment and was not informed of the dangers inherent in the workplace.
 
 
 3
 Shortly after commencing work as a lab technician, Mrs. Buford began experiencing headaches, nausea, and fatigue. In March, 1983, Mrs. Buford was diagnosed by BTL's in-house physician as suffering from leukopenia but was not informed of this fact. In December, 1983, after performing several hundred flame retardancy tests over a two-day period, Mrs. Buford collapsed and was admitted to a hospital where she was again diagnosed as suffering from chronic leukopenia. Due to her illness, Mrs. Buford has been unable to resume her duties as a lab technician at BTL.
 
 
 4
 In 1986, Indinar and Tony Buford filed this diversity suit in the district court. The complaint alleged that Indinar contracted chronic leukopenia, bacterial infections and respiratory disease due to her working conditions, that defendants knew that plaintiff's job exposed her to benzene and carcinogens and failed to provide her with adequate safety equipment, and that defendants concealed the danger from her. The complaint also alleged that Tony Buford suffered a loss of consortium as a result of his wife's illness. The district court, faced with competing motions for summary judgment, granted defendant's motion on the ground that plaintiffs' common-law claims were abrogated by the exclusive remedy provision of the Occupational Diseases Act. The plaintiffs now appeal from this decision.
 
 II.
 
 5
 In Indiana, two distinct but related statutory provisions provide compensation to individuals who suffer work-related harm. The first provision, the Workmen's Compensation Act, provides compensation for personal injury or death by accident arising out of and in the course of employment. Ind.Code Sec. 22-3-2-2. The second provision, the Occupational Diseases Act, provides compensation for disablement or death by occupational disease arising out of and in the course of the employment. Ind.Code Sec. 22-3-7-2. The statute defines an occupational disease as a disease that "follow[s] as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment." Ind.Code Sec. 22-3-7-10(b). Thus, the essence of a claim under the Occupational Diseases Act is harm resulting from exposure to dangerous conditions inherent in the workplace but not ordinarily encountered outside of the employment context.
 
 
 6
 The initial question presented by this case is whether the district court correctly concluded that the complaint alleged a claim under the Occupational Diseases Act. In our view, the answer is yes. The complaint alleges that Mrs. Buford suffers from chronic leukopenia, a disease affecting the white blood cells. Moreover, the complaint alleges that the leukopenia stemmed from her exposure to benzene, a carcinogen to which most individuals are not ordinarily exposed while conducting flame retardancy testing over a two-year period. Thus, plaintiffs' complaint clearly alleges damage resulting from exposure to dangerous conditions inherent in the workplace but not common elsewhere. As a result, we agree with the district court that plaintiffs' complaint alleged a claim under the Occupational Diseases Act.[1]
 
 
 7
 Having determined that plaintiffs' claim falls within the terms of the Occupational Diseases Act, we must next determine the effect of the statute's exclusive remedy clause. That clause provides:
 
 
 8
 The rights and remedies granted under this chapter to an employee subject to the chapter on account of disablement or death by occupational disease arising out of and in the course of the employment shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of such disablement or death.
 
 
 9
 Ind.Code Sec. 22-3-7-6.
 
 
 10
 Despite the language of the statute, plaintiffs ask us to interpret the exclusive remedy provision as permitting common-law actions in cases where egregious actions by the employer contributed to the employee's occupational disease.[2] Relying on National Can Corp. v. Jovanovich, 503 N.E.2d 1224 (Ind.App.3rd Dist.1987), a case that recognized a limited intentional tort exception to the exclusive remedy clause of the Workmen's Compensation Act,[3] plaintiffs urge us to adopt a similar exception to the Occupational Diseases Act. In National Can, a divided appellate court, relying on both the language of the Workmen's Compensation Act and humanitarian considerations, held that employees injured by their employer's intentional torts may maintain common-law causes of action in Indiana. Id. at 1232. The court, however, emphasized that the exception was a narrow one and applied only where the employer acted with actual intent to cause the injury suffered by the employee and with substantial certainty that the injury would occur. Id. Subsequently, in House v. D.P.D. Inc., 519 N.E.2d 1274, 1275 (Ind.App.2nd Dist.1988), the appellate court interpreted this exception as permitting common law causes of action only in cases involving violent crime which is not alleged in the present case. Thus, the plaintiffs are asking this court to not only apply the judicially created intentional tort exception to the Occupational Diseases Act but to interpret it in a more expansive manner than the Indiana courts.
 
 
 11
 The issue presented by this case is one of the most troublesome in the entire area of workmen's compensation law. See generally A. Larson Workmen's Compensation at Sec. 68. On the one hand, courts are sympathetic to an individual in Ms. Buford's condition and are reluctant to immunize an employer from a large damages judgment when its conduct causes that condition. On the other hand, courts, and especially a federal court sitting in diversity, are reluctant to contravene the express language of a statute particularly when that statute represents a delicately crafted balance between the rights of competing parties.
 
 
 12
 As might be expected, courts faced with the question of engrafting a judicially created exception onto an exclusive remedy provision of a compensation act have reached different conclusions. Some courts have held that even allegations of gross negligence suffice to remove a case from the ambit of an exclusive remedy provision. See Blankenship v. Cincinnati Milacron Chem. Inc., 69 Ohio St.2d 608, 433 N.E.2d 572, cert. den. 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982); Pleasant v. Johnson, 312 N.C. 710, 325 S.E.2d 244 (1985). In contrast, other courts have read the language of the statute literally and have held that all claims including those alleging injuries due to intentional torts are preempted by the statute. See Kandt v. Evans, 645 P.2d 1300 (1982); Kofron v. Amoco Chemical Corporation, 441 A.2d 226 (Del.Sup., 1982). One state supreme court has even managed to avoid the question even though it was requested to address it through the certification procedure. See Fisher v. Shenandoah General Construction Co., 498 So.2d 882 (1986).
 
 
 13
 The Indiana Supreme Court has never confronted the question whether an exception to the exclusive remedy provision of the Occupational Diseases Act exists. Consequently, the task before this court is to predict how that body would rule when faced with this question. See Adams v. Weber, 849 F.2d 1018, 1026 (7th Cir.1988). In making this prediction we look to all relevant authority including the language of the statute and intermediate court decisions. We note, however, that intermediate court decisions are not binding on this court. See Williams v. Lane, 826 F.2d 654, 661-62 (7th Cir.1987).
 
 
 14
 In our view, there is a good deal of evidence that the Indiana Supreme Court would not recognize any exception to the exclusive remedy provision of the Occupational Diseases Act. Cf. National Can Corp. v. Jovanovich, 503 N.E.2d 1224, 1232 (Conover J. Concurring) (arguing that there is no intentional tort exception to the exclusive remedy provision of the Workmen's Compensation Act). Initially, unlike the Workmen's Compensation Act there is no statutory language on which to predicate such an exception. The Workmen's Compensation Act applies only to accidental injuries and it is possible to argue that injuries stemming from intentional torts do not occur "by accident." In contrast, the applicability of the Occupational Diseases Act is not contingent upon any showing that the injury was accidental. See Joyce v. A.C. and S. Inc., 785 F.2d 1200, 1206 (4th Cir.1986). Second, even if we were willing to overlook this highly relevant factor, the Indiana Supreme Court's construction of the term "by accident" in the Workmen's Compensation Act does not suggest that the character of the tort is a consideration in determining the scope of the statute. In Evans v. Yankeetown, 491 N.E.2d 969, 975 (1986), the Indiana Supreme Court interpreted the term "by accident" to mean unexpected injury or death--a construction that does not exclude intentional torts. Thus, Evans does not support the notion that an intentional tort/non-intentional tort dichotomy exists under the Workmen's Compensation Act. Third, Evans emphasized that once the statutory criteria for stating a claim under the Workmen's Compensation Act were satisfied, all common law causes of action based on that claim were necessarily preempted. Id. at 973. In doing so, the court necessarily repudiated the position adopted by the majority in National Can that public policy considerations were relevant factors in interpreting the scope of the exclusivity provision of a compensation statute. Finally, Evans explicitly endorsed the doctrine "that exceptions should not ordinarily be declared by the courts when the legislature speaks broadly." Id. at 972 (quoting Kunkalman v. Gibson, 171 Ind. 511, 84 N.E. 985 (1908)).
 
 
 15
 In sum, based on the language of the Occupational Diseases Act and the decision in Evans v. Yankeetown, we predict that the Indiana Supreme Court would hold that there is no intentional tort exception to the exclusivity provision of the statute. Accordingly, we affirm the district court's decision granting summary judgment in favor of the defendants.[4]
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Plaintiffs argue that the complaint is more accurately characterized as alleging a personal injury within the meaning of the Workmen's Compensation Act. Specifically, plaintiff argues that she suffered an injury to the bone marrow from exposure to benzene and this injury in turn caused the leukopenia. This argument is without merit. Virtually all diseases can be said to result from a prior injury to a bodily part. By accepting this argument, we would effectively remove the Occupational Diseases Act from the Indiana Code
 
 
 [2]
 Alternatively, plaintiffs ask us to certify the question of the existence of an exception to the exclusive remedy clause to the Supreme Court. In view of the language of the statute, and the decision in Evans v. Yankeetown, we decline this invitation
 
 
 [3]
 Plaintiffs have not cited and we have been unable to find any case that recognizes an exception to the exclusive remedy clause of the Occupational Diseases Act
 
 
 [4]
 Due to our resolution of this case we need not consider plaintiffs' contention that the district court abused its discretion by failing to grant them a continuance to engage in more discovery